We raise two separate issues in this case. I'm going to address the second issue first, and that is the issue of whether or not the officers were allowed to invade the province of the jury by expressing their guilt as to the defendant in this case. One of the greatest gifts that our Founding Fathers bestowed upon us was the guarantee of the right to have a jury be the entity that determines the guilt of a citizen accused. Our courts have been a staunch bulwark in protecting that right. Not unremarkably, they have held. A judge cannot turn to the jury and say, I think this guy is guilty. Nor can a prosecutor say, I believe this person is guilty. And nor can a witness, especially not a lead case agent in the case. Detective Campbell was one of the witnesses in this case. He was the lead case agent. He sat with the prosecution at the prosecution's table throughout the trial, from jury selection through to the verdict. He was closely entwined with the prosecution. He testified at length. His testimony spans over 60 pages of the record. He was established as a person who was experienced in investigating sex trafficking cases that had a great amount of knowledge on sex trafficking cases. That he was — he decoded certain phrases for the jury involved in the case based on his knowledge and expertise. He explained to the jury normal reactions of certain victims of sex trafficking. Remind me just of the pretrial framework for him. Was there a motion that he be sequestered or not — He was not under the rule of sequestration, Your Honor. He was allowed to stay. And was there a pretrial motion to exclude or limit his testimony in any way? No, Your Honor. And was he qualified as an expert, or is that not an issue? He was not qualified as an expert. So he's testifying as a lay witness with personal knowledge. Correct. Did Keyes — when Keyes made the confession, was it to this special agent? Detective Campbell was not present during that interview of Mr. Keyes. Okay. But he interviewed the victims. Pardon me? He interviewed the victims. He interviewed the victims. Yes, Your Honor. So just one more sort of foundational question. Where in the record is the objection as to his testifying to an ultimate point? Where would we look to see the clear — There was no objection laid below. This is a plain error. It is plain error. Okay. So just, I mean, how do you start with just the back end of that? How is it a miscarriage when both victims testify in detail as to the sexual assaults and your client confesses? Why? Why? Well, in the United States Supreme Court in Kodiakus, I'll give you the site for that, is 328 U.S. 750 said, the inquiry cannot be merely whether there was enough to support the result apart from the phase affected by the error. It is rather even so whether the error itself had substantial influence. Right. But that would be prong three. I'm asking about prong four, plain error. How is it a miscarriage when both girl victims testify he assaulted? I think it goes to the integrity of the proceedings, which is another prong four. And that is the integrity, the importance of the constitutional right here is the right to have the jury-determined guilt and to protect that zealously. And it would be important to make a clear decision on that. Again, the government in this case is arguing there was not even any error in this case. So it's — Remind me, what was Keyes' defense? Keyes' defense was simple. The government has to prove that he caused the young — the victims to engage in prostitution. Their own testimony was that before they even had met Mr. Keyes, their plan was to engage in prostitution. They had met other men before they met Mr. Keyes and had sex with the men in exchange for drugs. They — that was their plan all along. So defense A was he didn't cause them to engage in prostitution. They — Jane Doe, too, testified, if I recall correctly, that she had represented herself to the other men and Mr. Keyes, that she was a teen and that they appeared to believe her. That Mr. Keyes' statements to Mr. — to Detective Campbell were that once I found out they were of — underage, I let them go. I no longer had anything to do with them. And there was evidence both girls did eventually leave Mr. Keyes. I think it was a two-week period in total for the second girl and a shorter period for the first girl. So that was the defense. And, of course, it was absolutely gutted by the opinion testimony of the two officers. Again, there were three issues. Did — did — did Mr. Keyes cause Jane Doe's one and two to engage in prostitution, knowing or in a reckless disregard of the fact they were under 18? Did Mr. Keyes have a reasonable opportunity to observe them? And did he compel Jane Doe one to engage in prostitution by force? Those are the three basic issues the jury had to decide. And at the conclusion of Mr. — of Detective Campbell's testimony after he'd established all his bona fides, here's what — here's what went down. The prosecution, all right, based on your investigation in this case, do you believe that Defendant Martavius Detrell Banks Keyes caused Jane Doe one and Jane Doe two to engage in commercial sex acts in the Northern District of Texas? I do. And what was the time period? From March to the middle — from the middle of March to the middle of April 2015, just as an indictment. Prosecution, OK, based on your investigation, do you believe that the defendant either knew or had a reasonable opportunity to observe Jane Doe one and Jane Doe two during that time period? I believe he did. Do you believe that the defendant caused Jane Doe one to engage in commercial sex acts by force, fraud, or coercion? Absolutely. Detective Halliburton was then called to the stand. Same — same basic scenario, establishes his bona fides as an investigator of sex trafficking cases, his intimate knowledge of those types of cases, and his investigation of the case, and the fact that he interviewed the defendant and then reviewed all the evidence. And at the end of his testimony, are you aware of whether or not the defendant caused Jane Doe one to engage in commercial sex acts when she wasn't with Jane Doe two, when Jane Doe two wasn't present? Absolutely. Based on all the information that you learned during your investigation, the entirety of it, did you believe that Jane Doe one had been compelled to engage in commercial sex acts through force, fraud, or coercion? Absolutely. And did you believe that the defendant, based on your investigation, had a opportunity to observe the girls? Absolutely. And based on your investigation, do you believe he compelled them to — do you — who do you believe compelled them to engage in those commercial sex acts? Mr. Keys. He even went further. They asked him — they put forth the defendant's defensive statements that were made in the interview, and he said, I believe he was absolutely lying when he said those things. None of those are permissible, and they definitely would have a tendency to sway a jury. And therefore, we would ask the Court to find that there was plain error in this case. I think the magnitude of the constitutional right is an important factor in this case, and the egregiousness of the error is as well. So that's what we would ask in this case. With regard to — as one court has stated, if courts allow agents to testify to their conclusions about the defendant's guilt, there would be no need for the jury trial — for the trial jury to review personally any evidence at all. With regard to the second issue, which is multiplicity, Mr. Keys was convicted twice of trafficking one person. Did I hear you correctly earlier that — I think you were saying eventually both girls, Jane Doe 1 and Jane Doe 2, were allowed to leave? They left. They left on their own, right? Yes. But as I understand the record, they had wanted to leave — or Jane Doe 1 in particular had wanted to leave earlier. That was her testimony. And there was evidence of force being used, and then, I guess, quite a few commercial sex acts after she tried to leave but was not allowed to. Is that correct? That's my understanding. Do you have a recollection of how many commercial sex acts after? I do not. I think both victims quantified that in the record. I don't recall, but I think — Certainly several after force. I think I remember 10 for one and well in excess of 10 for the other. And also commercial sex acts before that force event. I believe so. That was the testimony of the victim. And again, with regard to the strength of the case, the credibility of both victims was severely challenged. Jane Doe 2 testified that she had been hallucinating throughout this period of time, and both victims testified that they were ingesting voluminous amounts of drugs, including cocaine, throughout this period. So as to your double jeopardy argument, normally this argument works because it's multiple offenses brought against a single act. But as you've just acknowledged, there were multiple commercial sex acts. The statute is not — the statute is phrased in terms of whoever the actual words of the statute. It's the entire — it's the transaction. It's the — it's the series of events that it's trafficking, I-N-G. So it is — it is not just every discreet act. And the jury was certainly not instructed to find discreet acts. It was the same basic acts were — the only difference between the two convictions was the force element or the underage element, not the underlying acts that — Alito, the original one — the original indictment is just Jane Doe 1, and it's — it's trafficking single count minor, correct? Right. Then they supersede, and they put in Jane Doe 2, age, count 2, and they add the third count that you say is multiplicitous. Right. That's the force. Yes. One and three, then, are the ones at issue. Did the district court ever resolve your pretrial motion? It did not. But it's perfectly appropriate and common for judges, when there's a multiplicity motion, to wait to see if the government wants to elect its sentencing. Fair to say? Yes, Your Honor. But did — did you renew a request for an election? That was not renewed, Your Honor. What's the consequence of not asking to renew it? The burden — there should be no consequence to that. The case law is in United States v. Martinez, 821-659. The central inquiry for preservation purposes is the specificity and clarity of the objection, not the defendant's persistence in seeking relief. In Medina, Anastacio, 325 F. 3rd at 642, once a party raises an objection in writing, if he subsequently fails to lodge an oral on-the-record objection, the error is nevertheless preserved for appeal. Would you agree that, under the facts — or alleged, at least, by the United States — that your client, again, under the allegations, solicited Jane Doe One knowing she was underage, after she had told — What was — I'm not sure I understood. Yeah, I'm sorry. I'm not saying it very well. Under the allegations, is it true that your client is accused of soliciting an act of commercial sex after being told she was underage? He was accused of causing a commercial sex act knowing — Well, I use the word solicit because solicit is one of the many verbs that are — that is used. And it's a disjunctive. Any of these verbs alone would be enough. So, as I understand the record, they begin the commercial sex. At some point, Jane Doe One says, by the way, I'm underage. Then there's more solicitation of commercial sex. Then she says, I don't want to do this anymore. Force is applied, again, under the allegations, and further solicitation of commercial sex. Why are not those separate offenses under the statute? Again, the indictment says from on or about in the middle of March through on or about the end of April. So the government — the allegation is he's doing this conduct, he's trafficking this person by force during this period of time, and he's trafficking this person who is underage during this period of time. Any one of those acts are in support of each of those counts interchangeably. But I guess I'm — maybe it's Judge Ho's concern a little bit. It's — I would think the more likely motion, when you're looking at an indictment that says from on or about March till April, and the testimony is it's — they're being prostituted up to a dozen different men a day, that your argument would be duplicity. How do I defend against this? We're talking about hundreds of possible felony prosecutions. But you elected not to do it. Instead, you say it's multiplicitous. Hard to see two counts involving force and age relating to hundreds of prostituted moments over two months being — The unit of prosecution — I'm sorry. Go ahead. That's it. Go ahead. The unit of prosecution is not every discrete act of commercial sex. It's the scheme. It's the individual. A person trafficked. It's trafficking an individual. It's this person. I thought it's an offense to solicit somebody to engage in a commercial sex act. So if somebody does that a million times over a 50-year period, that's one crime? Perhaps with regard to soliciting, that could be. I don't see any case law based on that. But if you do it once in 2018, and then to the same person 20 years later, you do it again, one crime? No. That would be two crimes. That would be like two separate — Well, what's the difference? Why is it — why does the 20-year gap versus a few days gap matter? It'd be like two separate conspiracies would be an analog. It would be, you know, one ends and the other ends. It's — it's — it's this person is trafficking this individual. It's harboring — I thought it was a solicitation. Harboring is one of the elements. I thought it was a solicitation count, not a conspiracy count.  It was an analog. I was arguing by analogy. Analogy. Counsel, maybe you — you can reserve the rest on your report. Thank you, Your Honor. May it please the Court, this Court should affirm the district court's judgment imposing all three counts of the superseding indictment against Keyes. Could you tell me how you pronounce your name? Hoxie. Last name is? H-O-X-I-E, Jamie Hoxie. Thank you. In this case, the district court correctly decided that counts one and counts three were both properly — that — that imposing sentences against Keyes for counts one and three were proper. This decision was proper for two reasons that the government has explained. Either because these are two separate crimes, that forced fraud and coercion is a separate crime from trafficking a child. Or, in the alternative, under the continuous transaction test, the evidence at trial supported counts one and counts three, because the evidence at trial supported multiple different acts over the period of time, some of which involved the — Keyes' reasonable opportunity to observe that Jane Doe One was under the age of 18, and other acts which occurred while Keyes knew that forced fraud and coercion was being used to effectuate a commercial sex act. 1591 is a mouthful, right? Yes, Your Honor. I looked at the U.S. Attorney's manual. I would have thought there'd be some guidance on a unit of prosecution, more for the — I think the question to opposing counsel was asked as to duplicity than multiplicity. Is — does the government agree with opposing counsel's view that you can only charge March to April as one count because it's each child prostituted? Or could you have charged many, many incidents? In this instance, the government agrees that you can bring a trafficking charge under 1591 for each victim. However, the government disagrees with Keyes that there is one child, one crime. Under an — under A1, which is what was charged here in both counts one and counts three, A1 is listed with specific enumerated acts — recruiting, enticing, harboring, transporting, providing, obtaining, maintaining, patronizing, or soliciting. By contrast, A2 is what talks about a venture, a scheme. A2 may support the type of charge that Keyes is arguing here, that for a period of time, there can be one event, one trafficking. But the way that the statute is written is not trafficking. That's not the offense here. A1 is specific enumerated crimes. And both counts one and counts three were both A1 crimes here. Now, as explained in the government's brief, in this instance, you have different elements, and you know that force, fraud, and coercion is a different element from a child because the two have different mandatory minimum statute penalty provisions. In addition, you have different intent requirements for the two. And so for those reasons, the government contends that the Blockberger test is appropriate because these are two separate crimes. Is math this relevant at all here? I believe it is, Your Honor, because in this instance, under 1591, if you were to charge force, fraud, or coercion versus a minor under the age of a child, a minor under the age of 18, there has to be a unanimous finding by the jury as to either of those — either of those prongs. And we know that where you have — where the jury has to unanimously decide something, that is an element. And then again, under math this, we know that where there's a penalty, where there's separate penalties, those are considered elements. And so here, if you consider these two separate crimes, B1 and B2, the Blockberger test should apply. Now, of note — You say that the government can satisfy Blockberger here. What I'm wondering is why you even have to satisfy Blockberger here. I mean, do I understand correctly you've got — at time 1, Mr. Keyes solicits Jane Doe 1 for commercial sex. At time 2, he's told, I'm underage, I don't care, I want to now sort of freshly solicit the person for commercial sex. At time 3, I don't want to do this anymore, Mr. Keyes allegedly responds, no, I'm using force now, I'm again freshly soliciting. Why — I say freshly soliciting because it seems to me that those are separate crimes. Yes, Your Honor. And that is the government's — the point that under the continuous transaction test, if this Court were to determine or not use the Blockberger test and determine that this is one statute, that this is one crime, or that the — that 1591 is one crime, in this case, the evidence at trial did support that there were multiple crimes that occurred over the period of time. And so, yes, counts 1 and counts 3 are supported by the evidence in — at trial because the evidence at trial showed that Keyes, he harbored, he provided, he recruited, he obtained, he transported, and he solicited Jane Doe 1 over the month period of time. He did so. There's separate evidence showing that during this time, he not only had the reasonable opportunity to observe Jane Doe 1 and observe that she was under the age of 18, there's also separate evidence that, during this time, Keyes knew or recklessly disregarded the fact that force, fraud, or coercion would be used against her. Would the government be then satisfied with an affirmance based on the notion that these are multiple crimes and, therefore, Blockberger is never triggered? Or is the government actually asking us to do a Blockberger analysis as well? If the Court determines that these are separate crimes because they have separate penalty provisions, and then — No, I'm sorry. That there are separate acts here. As I understand Blockberger, it's when you have one crime being committed, one act. Let me make it more simple. One criminal act, but the government wants to charge multiple offenses. That's Blockberger. Here, I would — I wonder why Blockberger even applies because you have numerous criminal acts. And so what I'm asking is if you're — would you be satisfied by a finding that we don't even have to apply Blockberger because there are multiple criminal acts? Yes, Your Honor. I believe that — I believe that a finding that the district court judgment was — district court judgment is correct because there were multiple acts presented at trial is a correct result. I also believe that because you have two separate penalty provisions with different mandatory minimums, along with two separate intent requirements where force, fraud, or coercion is involved and where there's a child involved, that under Blockberger, that would be two separate crimes. And, in fact, the Todd decision from the Ninth Circuit that's cited in — in Key's reply brief actually characterizes, in the majority opinion, actually characterizes this as three separate crimes. What do you make of the fact that under 1591b2, it specifically says if the b1 offense was not so affected by essentially — what I'm trying to say is b2 seems to say that it's available only if there is no force or fraud. It would seem to me that that makes it hard to charge both for the same act because b1 is about force and b2 is about specifically not force but underage. Yes, Your Honor. I believe that under b2, you have — you have — That's why I'm — Yes, Your Honor. — injecting my alternative theory because I'm not sure your theory works. I guess I would go back to Mathis, that because you have to have unanimity between these two because there are two separate penalty provisions, that that would support that these are two separate crimes. But congressional intent is one of the touchstones of this analysis, right? Yes, Your Honor. Doesn't the b2 language about offense — an offense that does not involve force suggest that Congress doesn't intend this to be something you could charge twice, something you could charge under b1 and b2? Well, for example, I think going to your point that there were two separate — there were different acts that were involved here, right? So you could look at b2 as saying if the offense — when you're talking about the offense involved. If the offense is the — there was a solicitation of somebody who had the reasonable opportunity to observe was under the age of 18, that is the offense. So in that offense, a1 — I'm sorry, b1 would apply. However, if there was an incident — I'm sorry, b2 would apply. However, if there's an instance where force, fraud, or coercion is used in connection with the solicitation, recruitment, enticement, or harboring, so on and so forth, that — that is a complete offense. We're — you know, prostituting minors is often going to involve force. Is there no circuit that's explicated this as the multiplicity issue and how the government charges? Is there anything you would recommend that we look to at the circuit level instead of the district court opinion cited like Northern District of Ohio? What's the best circuit decision explicating this mouthful? Your Honor, unfortunately, I don't believe that there is a circuit opinion that has directly addressed this. Yeah. But, however, as I mentioned, the Todd decision, the Ninth Circuit case 627F3329, it says — it refers to these three penalty provisions or this statute as effectuating three different crimes. Yeah. Two involving children. Now, it's important to get it straight to help government prosecute and defendants defend, but am I right that there were concurrent life sentences on each count, so we're really talking about the special assessment? Yes, Your Honor. That's correct. That's what this reduces to in terms of the defendants' multiplicity exposure is just the $100 special assessment. In this case, that's correct. And under the grouping and the guidelines, counts — the two counts were grouped together because it was the same victim. So in this case, the only thing we're talking about is this mandatory special assessment. Did you handle this below? No, I did not, Your Honor. I only ask that because you seem prepared. It was interesting when I read the pretrial hearing. Do you remember what the government's response was when the defendant raised the multiplicity? Yes. It was, Your Honor, we'll consolidate. That's how we do it in Fort Worth. But if that's the answer they gave, that's inconsistent with your legal position here because if your position is correct that these are separate crimes, if what the government's doing in Fort Worth is consolidating, that would be duplicitous. Do you agree? Yes, Your Honor. I agree. Have you thought about that? Yes, Your Honor. The government in this case, below the district court, filed a motion defending and saying that these counts were not multiplicitous. There were some comments made that would suggest that they could be consolidated or that one would be dismissed upon, you know, if there were two judgments, two convictions from the jury. However, the district court correctly rejected that and correctly imposed both sentences because these are two separate crimes and even if it's the same crime, the evidence at trial was overwhelming and supported the imposition of counts one and counts three. Would the evidence at trial have been overwhelming without the testimony of the special agent and the detective? Yes, Your Honor. In this case, the government is not defending some of the statements. The government is defending the statements made by Detective Halbert regarding the interview. His observations during the interview of Keyes, I believe that those are appropriate under the Churchwell decision. Okay, I'm sorry to interrupt because it's your question, but therefore he was present when they were, when Keyes was confessing? Detective Halbert confessed to, I'm sorry, Keyes confessed to Detective Halbert. So Detective Halbert was there when Keyes was confessing and that confession was admitted into evidence and the jury reviewed it. The reason I think the jury reviewed it is because they specifically requested for speakers and a DVD player to watch that interview. And so Detective Halbert made certain statements regarding whether he thought that the defendant's statements in the interview were truthful or not. I believe those statements were appropriate under the Churchwell opinion. However, the other statements, the summary statements, the opinions, those are a handful. I believe Detective Halbert, there's two, maybe three at the end of his testimony. Detective, I'm sorry, Special Agent Campbell, there's three at the end of his testimony. If you were to take those out, the record is overwhelming with evidence in this case. Were those specifically objected to? No, none of the challenge statements in this case were specifically objected to. Correct. So we're talking about plain error review here. And where you have a handful of statements at the end of the agent's testimony, that is not sufficient to show that there is a reasonable probability that the outcome would have been different. Here, you have two girls, both of whom were children, when they were testifying two years later. The jury got to observe those two girls. They talked about their stories. They said that they hadn't seen each other, well, Jane Doe 1 testified that she had not seen Jane Doe 2 until the morning, that morning in the courtroom. Their stories of what happened were almost identical. Any differences were on the margins. And Keyes himself admitted to quite a bit of this in his interview with Detective Halbert. In fact, the account with Jane Doe 1, where she says she finally escaped because an older prostitute told her that Keyes was treating her so poorly and they needed to leave, she went to a house or an apartment. And then less than 24 hours later, Keyes came with guns, put a gun in her face, had friends come with guns, and the only reason that she didn't have to go back with Keyes or that she didn't die was because the people in that apartment and the trap house next door came out with bigger guns. Now, this was corroborated in large part by Keyes' own statement to Halbert that, yes, he did in fact see her at that house that day. And, yes, there was some sort of skirmish. Under those circumstances, the record is full of evidence that would support that what Jane Doe's 1 and 2 said was believable. Not only do you have their consistent statements largely corroborated by many of the statements by Keyes himself, but you also have physical evidence. You have the photo of Keyes on Facebook going down to Houston that Jane Doe 1 specifically referenced. You have the hotel records showing that he was paying for these hotel rooms during the time period. You have the back page ads, and you have his e-mails showing that he had over 200 back page ads during this time period. So in that instance, the cases, the Espino case that the government cited, in that case there were also two agents that gave lay opinion testimony. In that case, this Court found, the Espino-Rangel case, I'm sorry, 500 F. 3rd at 400. Those were two agents that gave lay opinion testimony, and that was found to be harmless error because the record supported the jury verdict, notwithstanding those statements. And the Second Circuit case, the Garcia case cited by the defense, in that case there was impermissible lay opinion testimony, but notwithstanding, the Second Circuit found that that was harmless, and that was not even a plain error standard. That was actually a failure. The government in closing say, and you heard from the summary agent, that he said this guy's guilty? No, Your Honor. That's exactly where I was going. No. The government did not rely on these handful of summary statements in its closing argument, and if you were to take out those handfuls, those summary statements, the evidence in this case was overwhelming against Keyes and certainly could have satisfied the jury, could have supported the jury's verdict. And the fact that these minors were provided with a tremendous amount of drugs be considered use of force? I believe it could be, certainly could be considered coercion. Dr. Wolfe testified that this is a common, it's common for traffickers to kind of control their victims by keeping them high on drugs, keeping them sleep deprived, and that's exactly what these girls said happened in this case. And I believe that, not I believe, the jury certainly was, it was certainly appropriate for the jury to believe that Jane Doe One was not free to leave because when she did leave, she was, he came after her less than 24 hours later. So under those circumstances, the jury's, the record in this case supports both that force, fraud, and coercion was used and that Keyes had the reasonable opportunity to observe the girls. He confessed that he saw these girls completely naked before he engaged in the transaction with Black to bring them, to transport them to his apartment and start pimping them out himself. Before he bought them. Before he bought them, yes, Your Honor. And to your, to the question that there is record evidence that force, fraud, and coercion happened at separate times than from the original time when Keyes knew that the girls were under the age of 18. Both girls testified that Keyes knew and was told that they were both under the age of 18 and then we know that Jane Doe Two left. She was, there was some transaction with a, with a John. For lack of a better word. After that, the, the record is multiple instances of sex, commercial sex acts. I believe the record is up to 16 times a day for Jane Doe One. That this happened and continued to happen in hotel rooms. It continued to happen with, where force was used. She recounts a specific instance at the Executive Inn where she was high on drugs and she was rolling around on the floor because she was tired. Presumably she did not want to do this anymore. And Keyes said, pulled a gun and said something to the effect of you really make me want to kill you. So certainly that would be enough for force, fraud, and coercion under the circumstances and in the record. So unless Your Honors have any other questions, the government asks that you affirm the district court judgment for the reasons we've argued. Thank you. Thank you. Butler. Thank you. With regard to the question on the multiplicity issue of the discreet acts, I am not saying that the government couldn't charge separate discreet acts. I don't know the answer to that because that's not the issue in the case. For instance, if the government had charged in this case that each of the separate commercial sex acts was a different crime, that might be permissible. It might not. I don't know the answer to that. That's not the issue in this case. And there really isn't any circuit direction on that. Yeah. But it doesn't matter for this case in any event. What is an analogy in this case would be, let's say there was one commercial sex act and the person was under 18 and force was used. Could he get two convictions for that? That's what we have in this case. Why can't you say it's not presented? Why can't we affirm on that ground? Because the only difference in this case about whether or not he got convicted of one count or two counts was whether or not force was used and whether or not she was under 18. The same exact — the way this case was presented to the jury, the way it was alleged, the way it was instructed is the same exact acts would have been the basis for his cause — for everything else other than those two elements. What are you saying? What is it exactly that prevents this Court, if it decides to, to affirm on this ground? The Supreme Court decision in Bell and this Court's decision in Evans would say if there's a — if there's a single transaction and a single statutory provision, that unless Congress has made it absolutely clear that they intended double punishments, there should be only one punishment. No, no, no. I understand that's the issue that you believe is presented. And that's — it's a fair point. That's, I think, how it was largely briefed. But this alternative theory that we've been talking about today, is there anything that prevents this Court from affirming on that alternative ground? Yes, because you cannot find that the jury found separate acts. There's no — the way it was presented to the jury, this jury verdict had to rely on the same acts. You certainly can't say that it didn't. So you can't find discrete acts. You can just find the only difference between the two verdicts is what I said, the force or the underage. I believe it was before the jury that there were these three time periods, right? The first time period where there was commercial sex acts, the second after the age was disclosed, and the third after force was used. That's all before the jury. In the indictment, it was — there was just perhaps different time periods for Jane Doe 1 and Jane Doe 2. But the time periods for Jane Doe 1 were the same, I believe. Yeah. But doesn't that cut in favor of this affirmance on alternative grounds? The time periods are very broad. They — in other words, they are capacious enough to cover — But the jury could find all or any of the acts within that time period to be the basis of each verdict. So there's no way for this Court to say the jury found discrete acts, and therefore, this is not a multiplicitous verdict. With regard to the question of whether or not Mathis applies, Mathis does not apply. First of all, this Court in Lerma said that double jeopardy analysis in the state of Texas with regard to an aggravated felony — I can't remember which it was — that double jeopardy analysis does not inform the debate with regard to whether or not Mathis analysis creates — renders a statute divisible or indivisible. Obviously, the issue here is congressional intent. Did Congress intend separate punishments? And the statute was created before Mathis, before Apprendi. And it would be like — furthermore, it's just — even if there's — it is an element, which it would have to be to be — to get the 15 to life, that the government would have to prove that the victim is under 14. It's like — that's akin to the drug statute. You can get a conviction for a certain amount of drugs, and it would be a higher sentence for a higher amount of drugs, and the higher amount of drugs would be an element, but it doesn't create separate punishments just for possession one amount of drugs. So, with regard to the harmlessness issue, in any case where there's a conviction, the government can point to testimony below that, if believed by a jury, taken out of the context of the fight that was had in the jury, would sound overwhelming, because — I'm not here evaluating the witness, the cross-examination, all the defense arguments, or anything else. You're just looking at the cold record and what supports it, and it looks pristine and it looks strong. Again, it ignores the fact that the girls admitted they were on drugs. One of them was hallucinating during this period of time. Okay, counsel. Thank you very much. Oh, I'm sorry. That's okay. We have your arguments. We appreciate it. We will call the second case, 17-412.